UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

GREVY GERARD PIERRE-LOUIS,

                          Petitioner,

-against-

UNITED STATES OF AMERICA,

                          Respondent.

------------------------------------------------------------X

20 CV 3010 (CM)
16 CR 541 (CM)

**DECISION AND ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

McMahon, J.

    Pierre-Louis pleaded guilty to one count of conspiracy to commit sex trafficking and one count of conspiring to transport minors interstate for the purpose of prostitution. On April 17, 2019, the Court sentenced Pierre-Louis to a term of 360 months' imprisonment.

    Before the Court is Pierre-Louis's motion asking the court to vacate his sentence pursuant to 28 U.S.C. § 2255, on the grounds that (1) he did not knowingly, intelligently, and voluntarily enter his plea due to ineffective assistance of James Branden (his attorney at the time of the plea) (Pet. at 5); (2) after sentencing, separate counsel (Connor McNamara and Russ Kofman) were ineffective by failing to file a notice of appeal "as requested" (Pet. at 6); and (3) the Court neglected to advise him of his right to appeal in violation of Federal Rule of Criminal Procedure 32(j) (Pet. at 7).[1]

    The Government opposes the motion arguing that Pierre-Louis's claims are without merit.

---

[1] References to court filings and docket numbers throughout are intended to reference the criminal docket, *United States v. Pierre-Louis*, 16 Cr. 541 (CM) (S.D.N.Y.) unless otherwise noted. References to "Pet." are to the assigned CM/ECF page numbers of Pierre-Louis's Petition under 28 U.S.C. § 2255 (Dkt. No. 97), rather than to any internal pagination.

1

Pierre-Louis's Ineffective Assistance of Counsel Claims

Pierre-Louis argues that he received ineffective assistance (1) at his plea because counsel promised him that he would not be sentenced to more than 15 years' imprisonment, and told him to "simply agree with whatever the Court asked" during his plea allocution (Pet. at 5); and (2) after sentencing, because counsel did not file a notice of appeal despite being instructed to do so (Pet. at 6).

"A defendant in criminal proceedings has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages in the proceedings, which include entry of a plea of guilty." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). To establish a claim of ineffective assistance of counsel, a petitioner must show that (1) the performance of his attorneys fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) that the petitioner suffered prejudice as a result of that representation. *Strickland v. Washington*, 466 U.S. 668, 687-88, 693-94 (1984). Only where both prongs of the *Strickland* test are satisfied may a court conclude that "counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment." *Id.* at 687.

A petitioner bears a "heavy burden" under the *Strickland* test. *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004). Regarding the performance prong, courts must apply the "strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see Bell v. Cone*, 535 U.S. 685, 698 (2002). With respect to the prejudice prong, the petitioner must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

"To warrant a hearing, [a Petitioner's § 2255] motion must set forth specific facts

supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez*, 722 F.3d 118, 130-31 (2d Cir. 2013.

*Pierre-Louis Received Effective Assistance from Plea Counsel*

Pierre-Louis argues that he entered into a plea agreement with the Government because his counsel (James Branden) assured him that he would receive a sentence of no more than 15 years' imprisonment. (Pet. at 18-19.) In support of this claim, Pierre-Louis provides a sworn declaration in which he claims Mr. Branden repeated this "guarantee" over "many communications." (*See* Pet. at 41 (Pierre-Louis Decl. ¶ 4.).)

Pierre-Louis's claims regarding Mr. Brandon are wholly contradicted by the declaration Brandon filed in response to defendant's allegations, as well as by the record of the plea itself.

Branden is unequivocal in his declaration that he never advised Pierre-Louis "that his sentencing exposure in terms of imprisonment was 'capped' at 15 years." (*See* Dkt. No. 105-1, Branden Decl. ¶ 6.) Indeed, Brandon does more than merely provide a declaration (a declaration that chronicles the many hours of discussions he had with his client regarding the possibility and consequences of a plea), he supports his statement with documentary evidence—beginning with the initial *Pimentel* letter and first plea offer (which provided for a Guidelines' sentence of life) to the final plea offer he negotiated on behalf of his client (that resulted in the revised Stipulated Guidelines' Range of 360 months' imprisonment to life). (*See* Dkt. No. 105-1, Branden Decl. ¶¶ 9-14.)

Brandon's insistence that he never told Pierre-Louis that his sentence would be capped at 15 years is corroborated by the transcript of the plea colloquy. Pierre-Louis was placed under oath and asked "every which way from Sunday" whether or not he had been made any promises beyond the plea agreement, had been threatened to change his plea, or had any reason to believe

3

that he knew what the Court's sentence would be. In response to these questions, Pierre-Louis confirmed that:

- He knew he could receive a life sentence (Dkt. No. 72 at 7-10);
- The Court was not bound by the Stipulated Guidelines Range set out in the plea agreement, and the Court could sentence him to between 10 years and life (*id.* at 13-14);
- If the Government promised a particular sentence, there was no such promise (*id.* at 14);
- There were no "side deals" with the Government (*id.* at 15);
- He had not been threatened, and no one promised him anything in order to get him to sign the plea agreement (*id.* at 16);
- No one made him a promise regarding what sentence the Court would impose (*id.* at 17); and
- He understood he had an absolute right to go to trial on the original four-count indictment in the case (*id.* at 21).

In light of this colloquy—which took place when Pierre-Louis was under oath—and in light of Mr. Branden's detailed and "unequivocal" declaration, Pierre-Louis's self-serving claims of ineffective assistance against Brandon are unconvincing. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("In determining whether the assertions in a § 2255 motion warrant discovery or a hearing, the court must also take into account admissions made by the defendant at his plea hearing, for solemn declarations in open court carry a strong presumption of verity."); *Garafola v. United States*, 909 F. Supp. 2d 313, 331 (S.D.N.Y. 2012) ("This assertion wholly contradicts the petitioner's previous sworn statements in court at the plea proceeding—that the petitioner understood the charges against him and that he had adequate time to discuss the charges and the Plea Agreement with his attorney—and therefore can be summarily dismissed.").

As for Pierre-Louis claim that Branden instructed him to "simply agree with whatever the court asked during the change of plea hearing" and to "just say yes" to questions asked by the

Court during the plea proceeding (Pet at 22.) (*Id.* ¶ 5.), that argument is also contradicted by Brandon's affirmation and the record. Mr. Branden states unequivocal that he never instructed Pierre-Louis to simply answer questions in the affirmative. (*See* Dkt. No. 105-1, Branden Decl. ¶ 7.) Instead, Mr. Branden told Pierre-Louis that "he would be sworn to tell the truth before answering the Court's questions and he should listen to the questions and answer them truthfully. I told him to ask me for help if he did not understand a question. I did not tell him to answer all questions in the affirmative." (*Id.* ¶ 15.) Mr. Branden explained, such an instruction would have been nonsensical, "especially because [Mr. Branden] knew the Court would ask questions that cannot be answered yes or no and that [the Court] would ask if promises (other than those in the agreement) or threats were made to [Pierre-Louis] to induce the guilty plea." (*Id.* ¶ 18.)

The transcript of the plea allocution likewise establishes the incredible nature of Pierre-Louis's claim. During that proceeding, Pierre-Louis repeatedly demonstrated that he was listening and responding to the specific questions posed by the Court. For example, Pierre-Louis provided narrative responses during the competency portion of the plea and in describing his crimes, and gave negative answers when asked whether there were any "side deals" beyond the four corners of the plea agreement, or whether any threats or promises has been made to induce him to change his plea. (*See* Dkt. No. 72 at 3-4, 15-17, 25-26.) Pierre-Louis was not, as he says, simply "yessing" the Court, on the advice of counsel, presumably to get through the plea allocution, believing his sentencing exposure would be capped at 15 years, no matter what was said. While Pierre-Louis may have hopped that his sentence would be capped at 15 years, nobody—not his attorney, not the Government, not the Court—told him any such thing.

Indeed, Pierre-Louis's plea colloquy conclusively establishes that he entered his plea knowingly and voluntarily. His attempt to suggest otherwise in his unsupported ineffective

5

assistance of counsel claims is meritless. *See Brown v. United States*, 637 F. Supp. 2d 212, 223 (S.D.N.Y. 2009) (dismissing a § 2255 petition because "[Petitioner's] claims of ineffective assistance of counsel in connection with his guilty plea are conclusory, contradicted by the record, unsupported by evidence and therefore are meritless").

*Pierre-Louis Received Effective Assistance from Sentencing Counsel*

Pierre-Louis argues that his sentencing attorneys were ineffective by failing to file a notice of appeal "as requested." He states that he instructed his lawyers to file the notice of appeal, but they "refused" because (1) Pierre-Louis waived his right of appeal, and (2) they had been paid only to handle Pierre-Louis's sentencing. (Pet. at 43 (Pierre-Louis Decl. ¶ 8.).)

"The Supreme Court has held that a lawyer who disregards a defendant's specific instruction to file a notice of appeal is constitutionally ineffective under the *Strickland* standard." *Colon v. United States*, 2010 WL 1644260, at *5 (S.D.N.Y. 2010) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000)). This is true even where a defendant has otherwise waived his right to appeal or collaterally challenge his sentence pursuant to a plea agreement. *See Campusano v. United States*, 442 F.3d 770, 771-72 (2d Cir. 2006); *Paulino v. United States*, 476 F. Supp. 2d 395, 396 (S.D.N.Y. 2007) ("Where a defendant waives his right to appeal his sentence under the terms of a plea agreement and nonetheless instructs his attorney to file a notice of appeal, counsel's failure to do so when it forfeits the proceeding is presumed to be prejudicial."). "However, a petitioner bears the burden of proof by a preponderance of the evidence in a Section 2255 proceeding"; thus, to prevail on such a claim, "a defendant must demonstrate that he timely instructed counsel to file a Notice of Appeal and that counsel failed to follow his instructions." *Colon*, 2010 WL 1644260, at *5 (citing *Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000)).

Here, Pierre-Louis makes no such showing. Both Mr. McNamara and Mr. Kofman

6

submitted declarations under penalty of perjury which contradict Pierre-Louis's claim. Mr. McNamara confirmed that although he met with Pierre-Louis after the plea—at which time Mr. McNamara (accurately) advised Pierre-Louis that Pierre-Louis had waived his right to appeal—"Mr. Pierre-Louis did not instruct [him] to file a notice of appeal." (Dkt. No. 105-2 (McNamara Decl. ¶ 8).) Mr. Kofman confirmed that the same was true for him: "Mr. Pierre-Louis did not direct me to file a notice of appeal on his behalf"—and in fact, Mr. Kofman did not have any record of having spoken with Pierre-Louis at any point after the sentencing. (Dkt. No. 105-3 (Kofman Decl. ¶¶ 6-7).)

In addition to these declarations, and to the Court's own observation of the effective assistance provided by counsel—indeed, the Court commented on it at sentencing—the written record before the Court underscores that Pierre-Louis's claim is "palpably incredible" and should be rejected. *See Gonzalez*, 722 F.3d at 130-31. Less than a week after sentencing, on April 22, 2019, Pierre-Louis filed a *pro se* motion under Rule 35(a) asking the Court to re-calculate his Guidelines. (*See* Ex. A.) That filing was sent to the Court against defense counsel's recommendation—a point on which both Pierre-Louis and Mr. McNamara agree, and a clear demonstration that Pierre-Louis was capable of raising issues to the Court when he felt his attorneys did not follow instructions. Yet nowhere in that *pro se* motion (or anywhere else) did Pierre-Louis indicate a desire to take an appeal, allege that his attorneys "refused" to file a notice of appeal, or ask for new counsel to be appointed to represent him for purposes of seeking appeal.

Mr. McNamara's response to the *pro se* motion is also instructive. McNamara advised the Court that counsel did not adopt Pierre-Louis's Rule 35 arguments, and since Pierre-Louis wished to proceed with his motion, the Court might wish to appoint a CJA attorney. (*See* Dkt. No. 91.) Had McNamara in fact been instructed by Pierre-Louis to file a notice of appeal at that

point, as Pierre-Louis alleges, Mr. McNamara could have included that information as an additional basis to support appointment of counsel—just as he did with respect to the Rule 35 motion. Instead, both filings are silent on the issue of appeal. And Pierre-Louis's continued silence—that is, the fact that he makes the argument only now—further exposes his self-serving declaration as a recent fabrication.

The Court's Allocution of Defendant Regarding Appeal Waiver

Pierre-Louis argues that the Court violated Rule 32(j)(1) by providing a "misleading admonition that he lacked any right whatsoever to appeal" at the time of sentencing. (Pet. at 14, 31.) This argument mischaracterizes the events that transpired during both the plea and sentencing proceedings, as well as the governing law.

Rule 32 describes the procedures the Court must follow at sentencing and upon entering judgment. Relevant here, Rule 32(j)(1) states that "[a]fter sentencing—regardless of a defendant's plea—the court must advise the defendant of *any* right to appeal the sentence." Fed. R. Crim. P. 32(j)(1)(B) (Emphasis added.). In other words, Rule 32(j)(1)(B) by its terms requires only that a defendant be advised of the right, if "any," he or she has to appeal. *See, e.g., United States v. Fisher*, 232 F.3d 301, 303 n.1 (2d Cir. 2000) (contrasting the Rule 32 requirements for a post-plea, as opposed to a post-trial, defendant). Thus, where a valid appellate waiver exists, there is no right to an appeal—and therefore no attendant requirement that the Court advise the defendant of (nonexistent) appellate rights:

> Under Federal Rule of Criminal Procedure 32(j)(1)(B), "[a]fter sentencing—regardless of the defendant's plea—the court must advise the defendant of any right to appeal the sentence." But Congress seems to have understood—indeed it is difficult to believe it did not understand—that advice as to a right to appeal a sentence need be given only when such a right exists. [And a] right might not

8

> exist either because it was never created in the first place, or because it was created and then waived.

*United States v. Liriano-Blanco*, 510 F.3d 168, 172-73 (2d Cir. 2007) (quoting *Fisher*, 232 F.3d at 303 (internal quotation marks omitted) (alteration in original); *see Alvarez Denis v. United States*, 2020 WL 5259346, at *6-7 (S.D.N.Y. Sept. 2, 2020) (JGK) (dismissing a § 2255 petition alleging that the court failed to properly advise petitioner of his appellate rights under to Rule 32(j)(1)(B) where the defendant pled guilty pursuant to a plea agreement containing a valid appellate waiver). Accordingly, the Second Circuit has emphasized to prosecutors that they should "'alert district judges at sentencing to the existence of appellate waivers, *see* [*United States v. Tang*, 214 F.3d 365, 370 (2d Cir. 2000)], both to provide an opportunity to clarify any ambiguity as to the scope of such waivers, and to afford district judges an opportunity to fashion any advice concerning possible appellate rights in light of the terms of the waiver.'" *Id.* (quoting *Fisher*, 232 F.3d at 305). Similarly, the Second Circuit has cautioned that a sentencing court should *not* give "unqualified advice concerning a right to appeal," and that instead, the sentencing court "might consider mentioning that appellate rights were waived in the plea agreement." *Tang*, 214 F.3d at 370.

In this case, the Court—having fully explained the implications of the appellate waiver at Pierre-Louis's plea proceeding, as required under Rule 11 (*see* Dkt. No. 72 at 15-16)—reminded Pierre-Louis at sentencing that he had waived his appellate rights, reading back a significant portion of the plea transcript after Pierre-Louis feigned ignorance of the prior proceedings and contradicted statements he previously made under oath. (*See* Dkt. No. 89 at 42- 47.) The Government also confirmed at sentencing—not once, but twice—that there was an appellate waiver in effect, and made of record the fact that the waiver "encompassed not just the term of imprisonment and the supervised release but also a fixed amount of restitution that the

defendant has already waived his right to appeal from, and the forfeiture of the items that were enumerated in the superseding information." (*Id.* at 42, 46-47.)

The Court precisely followed the Second Circuit's instructions, fully explaining the appellate waiver when Pierre-Louis entered his change of plea, and reminding Pierre-Louis of the appellate waiver again at sentencing. *See Alvarez Denis*, 2020 WL 5259346, at *6-7. There were no specific limitations on the appellate waiver, nor has Pierre-Louis articulated any reason "why the Court's instructions at the time of the sentencing were improper." *See id.* Because Pierre-Louis waived the right to appeal his sentence of 360 months' imprisonment, the Court was not obliged to incorrectly advise him that he had a right to appeal. *See, e.g., Liriano-Blanco*, 510 F.3d at 172-73; *Fisher*, 232 F.3d at 303-05; *Tang*, 214 F.3d at 370.

Even if Rule 32 required the Court to give erroneous and misleading notice to the defendant of a non-existent right to appeal, Pierre-Louis still cannot prevail because he suffered no prejudice. (Pet. at 31.) "[A] sentencing court's failure to inform a defendant of his right to appeal is subject to harmless error analysis." *Soto v. United States*, 185 F.3d 48, 54 (2d Cir. 1999). Thus, "as a general rule . . . a court's failure to give a defendant advice required by the Federal Rules is a sufficient basis for collateral relief *only* when the defendant is prejudiced by the court's error." *Peguero*, 526 U.S. at 27 (emphasis added). In this case, any error is unquestionably harmless, because Pierre-Louis waived his appellate rights by the express terms of his plea agreement. *See Soto*, 185 F.3d at 53; *Valente v. United States*, 111 F.3d 290, 293 (2d Cir. 1997).

Conclusion

Pierre-Louis's motion for relief pursuant to 28 U.S.C. § 2255 is denied; no hearing is necessary. *See Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (in claims of ineffective

assistance, affirming district court's decision to forego a full testimonial hearing where the court "reasonably decided that the testimony of [the defendant] and his trial counsel would add little or nothing to the written submissions").

Furthermore, Pierre-Louis has not made a substantial showing of a denial of a federal right, so no certificate of appealability shall issue. *See, e.g.*, *Hamilton v. Superintendent*, 2017 WL 1944114, at *6 (S.D.N.Y. 2017) (declining to issue a Certificate of Appealability "because Petitioner has failed to identify a claim that jurists of reason would find debatable as to whether Petitioner was denied such a right) (citing *Slack v. McDaniel*, 529 U.S. 473, 478 (2000)); *Prousalis v. United States*, 2018 WL 3471811, at *5 (DLC) (S.D.N.Y. 2018) (citing *Hoffler v. Bezio*, 726 F.3d 144, 154 (2d Cir. 2013); *Tankleff v. Senkowski*, 135 F.3d 235, 241 (2d Cir. 1998); *Rodriquez v. Scully*, 905 F.2d 24, 24 (2d Cir. 1990)). The Court finds that any appeal by Pierre-Louis from its Order would not be taken in good faith, pursuant to 28 U.S.C. § 1915(a)(3). *Id.* (citing *Coppedge v. United States*, 369 U.S. 438, 445 (1962)).

This constitutes the decision and order of the Court.

April 21, 2022

_____
Colleen McMahon
District Court Judge