```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-23-25
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

16-CR-541 (CM)

Grevy Gerard Pierre-Louis,

Defendant.

### DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE OR REDUCTION OF SENTENCE

McMahon, J.:

On April 17, 2019, the defendant, Grevy Gerard Pierre-Louis, was sentenced to 360 months' imprisonment for his involvement in a sex trafficking conspiracy, in violation of 18 U.S.C. § 1594(c), and participating in a conspiracy to transport minors interstate for the purposes of prostitution, in violation of 18 U.S.C. §§ 2423(a) and (e). Pierre-Louis is currently incarcerated at Otisville Federal Correctional Institution— his current release date is December 13, 2041.

Presently before the Court is Pierre-Louis's motion for compassionate release. He asks the Court to reduce his sentence to time served, and order immediate release to home confinement. (*Id.* at 1). The defendant claims that he is entitled to compassionate release because: (1) he is the sole caregiver for his 15-year-old son and 83-year-old mother; (2) he has been medically neglected by the BOP; (3) he endured childhood trauma; and (4) he is rehabilitated. (Dkt 120).

The Government urges the Court to deny Pierre-Louis's motion arguing that he has failed to establish any extraordinary and compelling reasons justifying early release; and, even if he were able to show that he is eligible for early release, his motion should be denied because he poses a danger to the community and because the § 3553(a) factors weigh heavily against release. (Dkt. # at 1).

The motion is denied.[1]

Background

For nearly two decades, up until Pierre-Louis's arrest in 2016 (when he was approximately 45 years' old), he trafficked women and minor girls to engage in commercial sex for his own financial gain. (PSR ¶ 11). The defendant, a member of the Bloods street gang, used extreme violence, rape and sexually assault, threats of violence, threats of deportation, emotional and psychological abuse, and threats to victims' family members to force and coerce victims to have sex for his profit. (*Id.* ¶¶ 11-13). For example, the defendant beat victims to keep them in line; he raped and sexually assaulted victims, including minor victims; he imprisoned victims in rooms, prohibiting them from leaving; he forced minor girls to assault each other or risk being beaten themselves; he forced victims to kneel on dry grains of rice for a prolonged period of time to inflict severe pain; he permitted victims to eat only when fed; he forced victims to urinate into cups instead of using the bathroom; he forced

---

[1] Pierre-Louis also asks the Court to appoint counsel to assist him in pursuing his motion for compassionate release. A defendant has no right to assistance of counsel in filing a motion for compassionate release. *United States v. Fleming*, 5 F.4th 189, 193 (2d Cir. 2021). Rather, the court has discretion to appoint counsel when the defendant shows the motion may have merit. *United States v. Acosta-Martinez*, No. 15-cr-87 (JFB), 2023 WL 3628589, at *1 n.1 (E.D.N.Y. May 24, 2023). Because the Court concludes that the issues presented in Pierre-Louis's motion for compassionate release are not legally complex and his arguments lack merit, the Court exercises its discretion to deny Pierre-Louis's motion to appoint counsel as well.

2

victims to transport narcotics for him inside their vaginas; he "branded" victims with his name (*i.e.*, "Caddy," or "Cadillac Slim," or his preferred symbol of dog paws); he hung one victim out a window; he shaved off a victim's hair; and he monitored victims to ensure they complied with his orders. (*Id.* ¶¶ 12-13).

On or about August 11, 2016, the defendant was arrested in Miami, Florida, and charged in Indictment 16 Cr. 541 (CM) with sex trafficking conspiracy, in violation of 18 U.S.C. § 1594(c), interstate transportation of minors for the purposes of prostitution, in violation of 18 U.S.C.§§ 2423(a), (e), and 2, use of interstate commerce to promote unlawful activity, in violation of 18 U.S.C. §§ 1952(a)(3) and 2, and child exploitation enterprise, in violation of 18 U.S.C. § 2252A(g). (Dkt. 2). The defendant was transported to New York and first appeared in this District on or about August 30, 2016. (PSR at 2). He was detained pending trial. (*Id.*).

On September 5, 2018, the defendant pleaded guilty to Counts One and Two of Superseding Information S1 16 Cr. 541 (CM), pursuant to a plea agreement with the Government. (*Id.* ¶ 7). Specifically, the defendant pleaded guilty to participating in a sex trafficking conspiracy, in violation of 18 U.S.C. § 1594(c), and participating in a conspiracy to transport minors interstate for the purposes of prostitution, in violation of 18 U.S.C. §§ 2423(a) and (e). (*Id.* ¶¶ 2, 3). Pursuant to the parties' plea agreement, the parties stipulated that the defendant's applicable Guidelines range was 360 months' to life imprisonment, with a mandatory minimum term of 10 years' imprisonment. (*Id.* ¶ 7; *see also id.* at 32).

On April 17, 2019, the Court sentenced the defendant to 360 months' imprisonment to be followed by a term of 10 years of supervised release. (Dkt. 88). The Court ordered

3

restitution in the amount of $90,000, comprised of $10,000 to each of nine victims (Dkt. 94), and forfeiture as to certain specific property (Dkt. 95).

Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). However, any reduction of a defendant's sentence must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §3582(c)(1)(A). Those applicable policy statements—there are six—are set forth in the United States Sentencing Guidelines § 1B1.13. Specifically, courts may consider a defendant's medical circumstances (§ 1B1.13(b)(1)), age (§ 1B1.13(b)(2)), family circumstances (§ 1B1.13(b)(3)), history of abuse (§

4

1B1.13(b)(4)), and whether the defendant is serving an unusually long sentence (§ 1B1.13(b)(6)). There is also a "catchall provision," that allows a court to consider "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the considerations in U.S.S.G. § 1B1.13(b)(1)–(4), "are similar in gravity" to such circumstances. (§ 1B1.13(b)(5)). Two of those statements are particularly relevant here:

> (1) *Medical circumstances of the defendant.* In addition to previously recognized circumstances such as a defendant suffering from a terminal illness or a serious medical condition, id. § 1B1.13(b)(1)(A)–(B), the amended guidelines direct courts to consider whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of serious health deterioration or death, id. § 1B1.13(b)(1)(C), or is held at a facility affected by or at imminent risk of being affected by an outbreak of infectious disease or other "ongoing public health emergency declared by the appropriate federal, state, or local authority," where "due to personal health risk factors and custodial status," the defendant is at a greater risk of severe complications upon exposure, and where "such risk cannot be adequately mitigated in a timely manner."

§ U.S.S.G. § 1B1.13(b)(1), and

> (3) *Family circumstances of the defendant.* Where the defendant is the "only available caregiver" for an immediate family member, this may support a sentence reduction. § 1B1.13(b)(3).

Importantly, neither the amendment to the Guidelines nor the Circuit's decision in *Brooker* changed the mandate in § 3582(c)(1)(A)(i), that a court contemplating a defendant's release pursuant to that section must also consider the sentencing factors at 18 U.S.C. § 3553(a), to the extent they remain applicable, and determine whether they counsel for or against release. A court always retains discretion to deny a motion for compassionate release if, in its view, the §

5

3553(a) factors override what would otherwise present extraordinary and compelling circumstances for release.

Pierre-Louis Exhausted his Administrative Remedies in the Bureau of Prisons

On or about May 2, 2024, the defendant submitted a request to the BOP for a sentence reduction. The defendant's motion was based on a "Debilitated Medical Condition," Death or Incapacitation of Caregiver of Child(ren)," and "Incapacitation of a Spouse or Registered Partner." On or about September 16, 2024, the BOP denied the defendant's request for compassionate release based on certain purported medical conditions because, among other things, the defendant's medical provider concluded that he did not qualify for early release because he was not debilitated. Accordingly, Pierre-Louis is deemed to have properly exhausted his administrative remedies, and his present motion for compassionate release is properly before the Court.

Pierre-Louis's Motion Before the District Court

Pierre-Louis claims that he is entitled to compassionate release because: (1) he is the sole caregiver for his 15-year-old son and 83-year-old mother; (2) he has been medically neglected by the BOP; (3) he endured childhood trauma; and (4) he is rehabilitated. As discussed below, none of these circumstances amounts to extraordinary and compelling reasons justifying early release. Moreover, even if defendant were able to show that he is eligible for early release, the sentencing factors at § 3553(a) weigh heavily against release.

*Pierre-Louis's Medical Circumstances*

The defendant claims that he suffers from "untreated" "[c]ervical spine injury" from a 2015 car accident, "chronic kidney disease," "high blood pressure," "multiple head traumas,

6

"post-electrocution neuropathy," and "severe arthritis," and that he was "denied neck physical therapy" and he "[needs]" and unspecified "surgery." (*Id.*). The defendant's BOP medical records reflect, however, that the defendant has been monitored and/or treated for back pain resulting from his 2015 spinal injury, kidney disease, and blood pressure. As recently as August 2025, the defendant was prescribed medication for his spine/back pain, which appears to have been monitored by the BOP since he was first detained in 2016.[2] The defendant's medical records also reflect a diagnosis of chronic kidney disease, which the BOP has continued to monitor since at least in or about 2018 (and, as reflected in the defendant's records, as recently as in or about August 2025). The defendant has had some high blood pressure readings and was prescribed blood pressure medication in or about August 2025. Accordingly, defendant's claims of medical neglect by BOP are unfounded.

In any event, none of the defendant's medical complaints constitutes "extraordinary and compelling reasons" justifying release. Indeed, Courts in this District have denied motions by defendants with medical conditions comparable to and/or more serious than that of the defendant. *See Gotti*, 433 F. Supp. 3d at 617 (denying release where 79-year-old defendant's hypothyroidism, hyperlipidemia, gout, glaucoma, left eye blindness, hypertension, ischemic cardiomyopathy, heart failure, chronic obstructive pulmonary disease, esophageal reflux, and chronic atrial fibrillation

---

[2] For example, the defendant's BOP medical records reflect that as of in or about September 2016, the defendant reported no spinal tenderness. As of in or about March 2017, the defendant complained about his lower back pain but refused medication. In or about March 2018, an x-ray was ordered, and the defendant requested soft shoes for his back pain. In or about August 2019, the defendant denied any acute pain from his cervical fusion. In or about June 2023, the defendant stated that, in the morning, he has a hard time rotating his neck. In or about October 2023, the defendant was evaluated by an orthopedist who observed that the defendant has stiffness in his neck and functional, but limited, cervical motion, and no evidence of muscle spasms. In or about August 2025, the defendant was prescribed medication for his back pain.

7

could be "adequately treated and monitored" by BOP); *see also, e.g., United States v. Castillo*, No. 03 Cr. 979 (KMW), 2023 WL 2262881, at *2 (S.D.N.Y. Feb. 28, 2023) (denying release for 65-year-old defendant with "serious age-related medical conditions including an enlarged prostate, eye problems, and heart disease" because those conditions were "well-managed" by the BOP); *United States v. Saleh*, No. 93 Cr. 181 (LAP), 2023 WL 158444, at *5 (S.D.N.Y. Jan. 10, 2023) (holding that 65-year-old defendant requiring multiple surgeries is "not 'experiencing a serious deterioration in physical or mental health because of the aging process'" but "[r]ather, he is experiencing the usual aches and pains of a 65-year-old"); *United States v. Borelli*, No. 84 Cr. 63 (LAP), 2021 WL 2228075, at *2 (S.D.N.Y. June 2, 2021) (finding no extraordinary and compelling circumstances for 72-year-old defendant suffering from diabetes, hypertension and heart disease, and cataracts), *aff'd*, No. 21-1506, 2022 WL 6831650 (2d Cir. Oct. 12, 2022); *United States v. Sabir*, 481 F. Supp. 3d 270, 275 (S.D.N.Y. 2020) (holding that 66-year-old defendant with prostate cancer, asthma, and prediabetes had not established "extraordinary and compelling circumstances"). Simply put, the defendant's medical complaints do not warrant the extraordinary relief of a sentence reduction, particularly given the heinous nature of his offense conduct.

*Family Circumstances*

Pierre-Louis claims that a sentence reduction is warranted pursuant to § 1B1.13(b)(3) (family circumstances provision) because he is the "sole caregiver" for his 15-year-old son and his elderly mother. (Def. Mot. at 1). With respect to the defendant's minor son, as discussed at the defendant's sentencing, the defendant "has nine children by seven women, some of whom were apparently [the defendant's] victims whom [the defendant] forced [himself] upon." (Sent. Tr. at 30). The defendant was not seriously involved in the lives of the majority of his children,

8

"except apparently the last two." (*Id.* at 24-25). On or about May 5, 2015, the defendant was arrested and charged with battery in connection with violence against one of his children. (*Id.* at 24). At sentencing, the Court was highly skeptical of the defendant's claims that he had attempted to be a "good father," and was "not moved" by the defense's argument for a more lenient sentence so that the defendant "could have a significant role in raising" his two youngest children, who were 12 and 8 years' old at the time of sentencing. (*Id.* at 33). In other words, the Court was fully aware of the defendant's minor children at the time of sentencing, and expressly rejected the view that leniency was warranted so that the defendant could care for his minor children. (*Id.*).

Moreover, the defendant's son's caregiver has not died, nor is she incapacitated. *See* U.S.S.G. § 1B1.13(b)(3)(A). Pierre-Louis has submitted an affidavit by Sierra Walcott, his daughter and the older sister and caretaker of the defendant's teenage son. Ms. Walcot says that she "can no longer continue being [the defendant's son's guardian," and that the defendant's son "needs his father . . . for emotional guidance, discipline, and stability." (Def. Mot. at 75-76, Ex. 8).[3] Obviously, Ms. Walcott is neither deceased nor incapacitated. Instead, it appears Ms. Walcott prefers to not care for the defendant's son because of the "strain" on her relationships. (*Id.*). That is simply insufficient to justify early release of a prolific sex trafficker who violently beat, tortured, raped, and forced women and minor girls to have sex for money for nearly two decades.

---

[3] Ms. Walcott, referenced in the PSR as "Cierra," was approximately 23 years' old at the time of the defendant's sentencing, is a college graduate and a registered nurse, and resided in Georgia. (PSR ¶ 119). Ms. Walcott submitted a letter at sentencing in support of the defendant. (Dkt. 85- 3 at 2-3).

9

With respect to the defendant's elderly mother, the defendant is not the "only available caregiver" for his mother. *See* U.S.S.G. § 1B1.13(b)(3)(C). The defendant has many family members, including his adult children and his two sisters. (*See* PSR ¶¶ 117, 119; *see also* Def. Mot. at 73, Ex. 7). In support of his motion, the defendant submitted a letter from his sister, Jaques Samedy, which notes that the defendant's "presence at home to care for [his mother] would significantly alleviate" his family's challenges. (Def. Mot. at 73, Ex. 7). That the defendant's assistance would be helpful is simply not enough to amount to an extraordinary and compelling family circumstance justifying early release of a violent, career sex trafficker.

The defendant has thus failed to meet his burden of showing that there are extraordinary and compelling family circumstances justifying his early release.

*Childhood Trauma and Rehabilitation*

Pierre-Louis argues that his childhood trauma and rehabilitation justify early release. But the mitigation report and forensic evaluation submitted by the defendant in support of his compassionate release motion were already submitted to and considered by the Court prior to sentencing. (*See* Dkt. 85-1 (mitigation report); Dkt. 85-2 (forensic evaluation)). The Court, already considered his background and childhood in fashioning its sentence:

> Your history and characteristics include some bad childhood. I frequently see defendants who have had difficult childhoods. They don't all do to a succession of women what you have done: pimp them, beat them, drug them, use them to sell drugs, imprison them, punish them, terrify them, break their noses, break their eardrums, break their spirit, scar them for life. And the fact that you had a rotten childhood does not excuse you for one of those things. I accept no excuse for treating another human being in that fashion, none, for anyone.

(Sent. Tr. at 29-30).

As to the defendant's claim of rehabilitation, even if I were to accept that it is (at some level) genuine, it "is not, by itself, an extraordinary and compelling reason." U.S.S.G. § 1B1.13(d).

Accordingly, none of defendant's arguments justifies early release.

*The § 3553(a) Factors*

Even if Pierre-Louis were able to show an extraordinary and compelling reason for a reduced sentence—and he has not—application of the Section 3553(a) factors would outweigh any justification for early release.

Pierre-Louis's committed heinous crimes for almost two decades. He preyed upon numerous minor girls and women who were vulnerable for different reasons, and he tortured them, beat them, threatened them, and controlled them so that he could force them to have sex with strangers for his own profit. He caused indescribable harm to victim after victim. One victim attempted to describe the impact of the defendant's crimes in a victim impact statement that included the following:

> It is hard for me to put into words how I feel. I will never be the same again. Physically, emotionally, mentally, the pain and suffering caused by the hands of Caddy will haunt me forever. I am broken, depressed, confused, traumatized.
>
> I am nervous in small spaces because Caddy used to lock me in rooms as punishment. I have been beaten with belts like a child, stripped naked and placed outside in the cold, my hair [cut] off, not fed for days. This was how we [were] punished if we did anything wrong. It's hard to realize by worth because of always being told by Caddy I'm nothing more than a ho. Being sexually with a man is impossible. I hate for a man to touch me.
>
> I don't know how to give or receive love. I go through different mood swings every day. I'm always looking over my shoulder for

> Caddy or his family. I'm terrified of Caddy and his family. He heard the screams and crying for help but ignored the cries for help and turned the TV up. He took my whole teenage years away from me. He took my self-esteem, my spirit, and today I'm hoping to gain it all back.

(Sent. Tr. at 4-5; *see also id.* at 5-11 (additional victim statements)). As I said at Pierre-Louis's sentencing, what he did to a "succession of women" and children "is a form of murder." (*Id.* at 30). He "killed something in each of" the victims. (*Id.*). And the seriousness of the defendant's offense, "and the need to punish [the defendant] for what [he] did and to give justice to [his] victims as a by-product of that punishment[,] . . . trump every other sentencing consideration." (*Id.* at 32). The seriousness of Pierre-Louis's crimes and the need to punish him for those crimes continues to trump the other sentencing considerations.[4]

Pierre-Louis motion for compassionate release is denied.

Dated: October 22, 2025
New York, New York

_____
COLLEEN McMAHON
United States District Judge

---

[4] The Government argues quite convincingly that the Court should also consider that Pierre-Louis remains a danger to the community and that there is high likelihood that he will recidivate, given the duration of the offense conduct, the nature of the offense, defendant's lengthy criminal history (which includes 16 criminal convictions and numerous arrests spanning decades) and, in the Government's' view, defendant's lack of remorse. Pierre-Louis in his motion papers suggests that the Government's view of him is wrong. He expresses remorse for his victims, and claims that he is (now, at 53 years old) rehabilitated. The Court would characterize Pierre-Louis's prognosis not to reoffended as "extremely guarded." Whether or not defendant would reoffend if released is a moot question since the Court is not entertaining his release; as I said, the need to punish defendant for his crimes continues to trump all other sentencing considerations.